# 24-2665-cv

## United States Court of Appeals

*for the*

## Second Circuit

CYNTHIA BRACCICA, JENNIFER BROWNE, ANDREA DEPALMA, DENNISE JOHNSON, MARISOL VENTRICE, IRINA ABRAMOV, MAUREEN ALCHERMES, DAWN ALOIS, JOY ALTRUI, ANGELA BASTONE-PERGOLA, EVGENIYA BATALLA, DIANE BONO, KATHERINE CARNEY, KAREN FERRANDO, CARMELA FIORICA, EILEEN HAGAN, SARAH HASENEY, MARYANN HOJNOWSKI, KATHERINE KOUGENTAKIS, NILBERK KURT, KAREN LA ROSA, DEBRA LANAHAN, NADIRA MAHABIR, VERONICA NEWTON, KATLYN PASTOR, REBECCA RAMIREZ, JULIA SHAW, ROSE TAYLOR, MIA TORRES, AND MICHELE WOODWARD-LAWTON,

*Plaintiffs-Appellants,*

– v. –

NORTHWELL HEALTH SYSTEMS,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

ERIN M. TRAIN
JACQUELINE PHIPPS POLITO
LITTLER MENDELSON, P.C.
*Attorneys for Defendant-Appellee*
375 Woodcliff Drive, Suite 2D
Fairport, New York 14450
(585) 203-3400

COUNSEL PRESS   (800) 4-APPEAL • (380932)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Northwell Health, Inc. (incorrectly captioned as "Northwell Health Systems") hereby states, by and through its undersigned counsel of record, that it does not have a parent company, and no publicly-held entity owns 10 percent (10%) or more of its stock.

# TABLE OF CONTENTS

**PAGE**

JURISDICTIONAL STATEMENT ...................................................................1

COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW ...............1

STATEMENT OF THE CASE............................................................................2

    I.    The New York State Department of Health Mandate ....................2

    II.    Procedural Background .................................................................6

    III.    Factual Background and Allegations..............................................8

    IV.    The District Court's Decision.......................................................10

SUMMARY OF THE ARGUMENT .................................................................12

STANDARD OF REVIEW ..............................................................................14

ARGUMENT ...................................................................................................16

    I.    The District Court Applied the Appropriate Standard in Dismissing Plaintiffs' Complaint ................................................16

    II.    The District Court Correctly Dismissed Plaintiffs' Title VII Claims ................................................................................20

        A.    Plaintiffs' Failed to State a *Prima Facie* Claim for Disparate Treatment ..........................................................21

            1.    The District Court Correctly Found That Plaintiffs Were Not Qualified for Their Positions .................................................................22

            2.    The District Court Correctly Found That Plaintiffs' Conclusory Allegations Were Insufficient to Plausibly Allege Discriminatory Intent ................................................25

        B.    Plaintiffs Fail to State a Plausible Failure to Accommodate Claim..........................................................29

            1.    Plaintiffs Failed to Plausibly Allege a *Prima Facie* Failure to Accommodate Claim Under Title VII..............................................30

            2.    Plaintiffs' Requested Accommodation Amounted to Undue Hardship Under Precedential Second Circuit Decisions ...................32

ii

3.    The Current Status of the DOH Mandate Is Irrelevant .............................................................36

III.    The District Court Correctly Dismissed Taylor's ADA Claim.......................................................................41

A.    Taylor Abandoned Her ADA Claim ..................................42

B.    Taylor Failed to Plausibly Allege a *Prima Facie* Claim ...........................................................................43

1.    Taylor Failed to Plausibly Allege She Was "Disabled"...................................................44

2.    Taylor Was Not Qualified for Her Position.............48

3.    Taylor Fails to Plausibly Allege a Causal Connection ..............................................................49

4.    Taylor's Arguments Regarding the "Interactive Process" Cannot Save Her ADA Claim ......................................................50

C.    Taylor's Medical Exemption Request Amounted to An Undue Burden .........................................................51

CONCLUSION .................................................................................55

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Ansonia Bd. of Educ. v. Philbrook*,
  479 U.S. 60 (1986) ............................................................30

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................*passim*

*Baker v. Home Depot*,
  445 F.3d 541 (2d Cir. 2006) ............................................30

*Bartlett v. New York State Bd. of Law Examiners*,
  226 F.3d 69 (2d Cir. 2000) ..............................................50

*Beickert v. New York City Dep't of Educ.*,
  No. 22-CV-5265 (DLI)(VMS), 2023 WL 6214236 (E.D.N.Y. Sept.
  25, 2023) ................................................................23, 53

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................14, 17

*Biden v. Missouri*,
  142 S. Ct. 647 (2022) .......................................................54

*Billings v. N.Y. State Dept. of Corr. & Cmty. Supervision*,
  No. 19-cv-11796 (NSR), 2021 WL 4150925 (S.D.N.Y. Sept. 10,
  2021) ....................................................................27, 49

*Borkowski v. Valley Cent. Sch. Dist.*,
  63 F.3d 131 (2d Cir. 1995) ............................................44, 48

*Brown v. South Shore University Hosp.*,
  No. 2:23-cv-6374 (NJC)(ST), --- F. Supp. 3d ---, 2025 WL 71730
  (E.D.N.Y. Jan. 10, 2025) ..............................................22, 24

*Burns v. City of Utica*,
  590 F. App'x 44 (2d Cir. 2014) .........................................14

iv

*Cagle v. Weill Cornell Medicine*,
No. 22-cv-6951 (LJL), 2023 WL 4296119 (S.D.N.Y. June 30,
2023) ....................................................................................................36

*City of Chicago v. Morales*,
527 U.S. 41 (1999).................................................................................41

*Cosme v. Henderson*,
287 F.3d 152 (2d Cir. 2002) ............................................................20, 32

*D'Cunha v. Northwell Health Sys.*,
No. 1:22-cv-0988 (MKV), 2023 WL 2266520 (S.D.N.Y. Feb. 28,
2023), *aff'd*, No. 23-476-cv, 2023 WL 7986441 (2d Cir. Nov. 17,
2023) ..............................................................................................*passim*

*D'Cunha v. Northwell Health Systems*,
No. 23-476-cv, 2023 WL 7986441 (2d Cir. Nov. 17, 2023)...........*passim*

*Davis v. New York City Dept. of Educ.*,
804 F.3d 231 (2d Cir. 2015) .................................................................43

*United States v. Davis*,
588 U.S. 445 (2019).................................................................................41

*Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*,
804 F.3d 178 (2d Cir. 2015) .................................................................50

*Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*,
No. 22-CV-2929 (CS), 2023 WL 3467143 (S.D.N.Y. May 15,
2023) .........................................................................................36, 37, 54

*U.S. v. DePoli*,
628 F.2d 779 (2d Cir. 1980) .................................................................39

*Doe v. Franklin Square Union Free Sch. Dist.*,
100 F.4th 86 (2d Cir. 2024), *cert. denied*, 145 S.Ct. 570 (2024) ...............15, 25

*Does 1-2 v. Hochul*,
632 F. Supp. 3d 120 (E.D.N.Y. 2022) .............................................34, 54

*Does 1-2 v. Hochul*,
No. 22-2858, 2024 WL 5182675 (2d Cir. Dec. 20, 2024) .........................*passim*

*Dominguez v. Bd. of Educ. of Yonkers City Sch. Dist.*,
    No. 23 Civ. 2460 (NSR), 2024 WL 3427217 (S.D.N.Y. July 16,
    2024) ............................................................................................46

*Double Green Produce, Inc. v. Forum Supermarket Inc.*,
    387 F. Supp. 3d 260 (E.D.N.Y. 2019) ...............................................38

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
    747 F.3d 145 (2d Cir. 2014) ..............................................17, 19, 25

*Earl v. Good Samaritan Hospital of Suffern NY*,
    625 F. Supp. 3d 292 (S.D.N.Y. 2022) ..........................................46, 47

*Farang v. XYZ Two Way Radio Serv., Inc.*,
    No. 22-1795, 2023 WL 2770219 (2d Cir. Apr. 4, 2023)...............15, 42

*Feingold v. New York*,
    366 F.3d 138 (2d Cir. 2004) ..............................................................20

*FCC v. Fox TV Stations, Inc.*,
    567 U.S. 239 (2012)...........................................................................41

*Goldschmidt v. N.Y.S. Affordable Hous. Corp.*,
    380 F. Supp. 2d 303 (S.D.N.Y. 2005) ..........................................20, 21

*Graves v. Finch Pruyn & Co.*,
    457 F.3d 181 (2d Cir. 2006) ..............................................................50

*Graziano v. Pataki*,
    689 F.3d 110 (2d Cir. 2012) ..............................................................15

*Groff v. DeJoy*,
    600 U.S. 447 (2023)..............................................................13, 35, 36

*Hamilton v. City of New York*,
    563 F. Supp. 3d 42 (E.D.N.Y. 2021) .................................................33

*Hamilton v. Westchester Cnty.*,
    3 F.4th 86 (2d Cir. 2021) ...................................................................16

*Hernandez v. Staten Island Univ. Hosp./Northwell Health*,
    No. 22-CV-3572-RPK-JRC, 2023 U.S. Dist. LEXIS 145507,
    (E.D.N.Y. Aug. 18, 2023), *adopted by* 2023 U.S. Dist. LEXIS
    157942 (E.D.N.Y. Sept. 6, 2023). ....................................................52

*Holmes v. New York City Dept. of City-Wide Admin. Services*,
  No. 14-CV-8289(KBF), 2015 WL 1958941 (S.D.N.Y. Apr. 30,
  2015) ...................................................................................44

*Jacobs v. N.Y. Foundling Hosp.*,
  577 F.3d 93 (2d Cir. 2009) .................................................42

*Kalsi v. New York City Transit Auth.*,
  62 F. Supp. 2d 745 (E.D.N.Y. 1998), *aff'd* 189 F.3d 461 (2d Cir.
  1999) ...................................................................................54

*Kolender v. Lawson*,
  461 U.S. 352 (1983) ............................................................41

*Krys v. Pigott*,
  749 F.3d 117 (2d Cir. 2014) ...............................................15

*Kueh v. New York and Presbyterian Hosp.*,
  No. 23-CV-666 (VSB), 2024 WL 4882172 (S.D.N.Y. Nov. 25,
  2024) ...................................................................................28

*Lemon v. Kurtzman*,
  411 U.S. 192 (1973) ............................................................39

*Littlejohn v. City of N.Y.*,
  795 F.3d 297 (2d Cir. 2015) ...............................................21

*Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*,
  263 F.3d 208 (2d Cir. 2001) ...............................................50

*Lowe v. Mills*,
  68 F.4th 706 (1st Cir. 2023), *cert. denied*, 144 S. Ct. 345 (2023).........35, 37, 38

*Lowman v. NVI LLC*,
  821 F. App'x 29 (2d Cir. 2020) .......................................22, 26, 30, 32

*Mace v. Crouse Health Hosp., Inc.*,
  No. 522CV1153TJMATB, 2023 WL 5049465 (N.D.N.Y. Aug. 8,
  2023) ...................................................................................37

*Marshall v. Westchester Med. Ctr. Health Network*,
  No. 22-cv-7990 (NSR), 2024 WL 665200 (S.D.N.Y. Feb. 16,
  2024) ...................................................................................46

*Martin v. City Univ. of New York*,
    No. 17 CIV. 6791 (KPF), 2018 WL 6510805 (S.D.N.Y. Dec. 11,
    2018) .............................................................................................22

*McBride v. BIC Consumer Prod. Mfg. Co., Inc.*,
    583 F.3d 92 (2d Cir. 2009) ..............................................................50

*McKenzie v. Big Apple Training Inc.*,
    No. 1:22-CV-9554-GHW, 2024 WL 1746057 (S.D.N.Y. Apr. 23,
    2024) .............................................................................................19

*Med. Prof. for Informed Consent, Inc. v. Bassett*,
    220 A.D.3d 1157, 197 N.Y.S.3d 785 (N.Y. App. Div. 2023) .............................6

*Med. Prof. for Informed Consent, Inc. v. Bassett*,
    No. CA 23-00161, 2023 WL 2344242 (N.Y. App. Div. Feb. 27,
    2023) ...............................................................................................6

*Med. Prof. for Informed Consent v. Bassett*,
    185 N.Y.S.3d 578 (N.Y. Sup. Ct. 2023) ...............................................5

*Mercer v. Viacomcbs/Paramount*,
    22-CV-6322 (LGS), 2024 WL 3553133 (S.D.N.Y. July 26, 2024) ..................47

*Moore v. Montefiore Med. Ctr.*,
    No. 22-cv-10242(ER), 2023 WL 7280476 (S.D.N.Y. Nov. 3, 2023) ...............38

*Morey v. Windsong Radiology Group, P.C.*,
    794 F. App'x 30 (2d Cir. 2019) .........................................................43

*Mumin v. City of New York*,
    No. 1:23-cv-03932 (JLR), ---F.Supp.3d---, 2024 WL 5146085
    (S.D.N.Y. Dec. 17, 2024) .................................................................29

*United States v. Munsingwear, Inc.*,
    340 U.S. 36 (1950)..........................................................................39

*Nazon v. Time Equities, Inc.*,
    No. 21 Civ. 8680 (AT) (SLC), 2022 WL 18959570 (S.D.N.Y. Nov.
    22, 2022), *adopted by* 2023 WL 1516905 (S.D.N.Y. Feb. 3, 2023) ................47

*Ndemenoh v. Boudreau*,
    No. 20-CV-4492 (RA), 2023 WL 6122852 (S.D.N.Y. Sept. 19,
    2023) ............................................................................................42

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ........................................................17, 19

*Nielsen v. AECOM Tech. Corp.*,
   762 F.3d 214 (2d Cir. 2014) ..............................................................15

*Norman v. NYU Langone Health System*,
   492 F. Supp. 3d 154 (S.D.N.Y. 2020), *aff'd* No. 20-3634, 2021 WL
   5986999 (2d Cir. Dec. 17, 2021) ........................................................47

*Norton v. Shelby County*,
   118 U.S. 425 (1886)............................................................................39

*Papaliberios v. Mt. Sinai Health System, Inc.*,
   No. 23-CV-8661 (EK) (AYS), 2025 WL 964114 (E.D.N.Y. Mar.
   31, 2025) ......................................................................44, 45, 48, 49

*Patane v. Clark*,
   508 F.3d 106 (2d Cir. 2007) ..............................................................14

*Perez v. New York Presbyterian/Weill Cornell Med. Ctr.*,
   No. 23-CV-6152 (CS), 2024 WL 1514216 (S.D.N.Y. Apr. 8, 2024) ...............47

*Reyes v. Westchester Cty. Health Care Corp.*,
   No. 21-0410, 2021 WL 4944285 (2d Cir. Oct. 25, 2021) ...................................26

*Rice as Tr. of Richard E. & Melinda Rice Revocable Fam. Tr. 5/9/90
   v. Intercept Pharms., Inc.*,
   No. 21-cv-0036 (LJL), 2022 WL 837114 (S.D.N.Y. Mar. 21, 2022) ...............52

*Riley v. New York City Health & Hosps. Corp.*,
   No. 22-cv-2736, 2023 WL 2118073 (S.D.N.Y. Feb. 17, 2023)........................53

*Russo v. Patchogue-Medford Sch. Dist.*,
   129 F.4th 182 (2d Cir. 2025) ..............................................................33

*Sealey v. Affiliated Comput. Servs., Inc.*,
   No. 11-CV-489S, 2012 WL 729217 (W.D.N.Y. Mar. 6, 2012),
   *aff'd* 522 F. App'x 35 (2d Cir. 2013)....................................................26

*Sharikov v. Philips Med. Sys. MR, Inc.*,
   103 F.4th 159 (2d Cir. 2024) ........................................................16, 43

*Sonora v. Cmty. Sys., Inc.*,
　Civil Action No. 1:17-cv-01444, 2018 WL 10483858 (E.D. Va.
　Apr. 6, 2018) ................................................................................29

*Staron v. McDonald's Corp.*,
　51 F.3d 353 (2d Cir. 1995) ..........................................................51

*Suarez v. New York County District Attorney's Office*,
　No. 22 Civ. 10855 (PGG) (OTW), 2025 WL 894516 (S.D.N.Y.
　Mar. 24, 2025)..............................................................................45

*Sulehria v. City of New York*,
　670 F. Supp. 2d 288 (S.D.N.Y. 2009) ..........................................23

*Thibodeau v. Protuondo*,
　486 F.3d 61 (2d Cir. 2007) ..........................................................40

*Thompson v. Keliher*,
　2024 WL 4851243 (D. Me. Nov. 21, 2024) ..................................40

*Together Emps. v. Mass. Gen. Brigham Inc.*,
　573 F. Supp. 3d 412 (D. Mass. 2021)...........................................52

*Union Square Supply Inc. v. De Blasio*,
　572 F. Supp. 3d 15 (S.D.N.Y. 2021) ............................................41

*Vangas v. Montefiore Med. Ctr.*,
　823 F.3d 174 (2d Cir. 2016) ........................................................51

*Vega v. Hempstead Union Free Sch. Dist.*,
　801 F.3d 72 (2d Cir. 2015) ..........................................................21

*VIP of Berlin, LLC v. Town of Berlin*,
　593 F.3d 179 (2d Cir. 2010) ........................................................40

*We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*,
　76 F.4th 130 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2682 (2024) ...................17

*We the Patriots USA, Inc. v. Hochul*,
　17 F.4th 266 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2569 (2022) ............*passim*

*We the Patriots USA, Inc. v. Hochul*,
　17 F.4th 368 (2d Cir. 2021) ........................................................*passim*

*Williams v. MTA Bus Co.*,
  No. 17CV7687 (DF), 2020 WL 1922911 (S.D.N.Y. Apr. 20,
  2020), *reconsideration denied*, No. 17CV7687 (DF), 2020 WL
  4904058 (S.D.N.Y. Aug. 20, 2020) ................................................................. 22

*Wilson v. New York Soc'y for the Relief of the Ruptured & Crippled,*
  *Maintaining the Hospital for Special Surgery*,
  22-CV-9207 (AT) (JLC), 2023 WL 5766030 (S.D.N.Y. Sept. 7,
  2023) ..................................................................................................................... 37

**Statutes**

42 U.S.C. § 2000e(j) ........................................................................................... 30

42 U.S.C. § 12102(1)(A).................................................................................... 44

N.Y. PUB. HEALTH L. § 2806 ....................................................................... 3, 4, 38

**Other Authorities**

10 N.Y.C.R.R. § 2.61 ................................................................................. *passim*

45 N.Y. Reg. 22 (Oct. 4, 2023) ............................................................................ 6

2022 N.Y. Reg. Text 601321, 44 N.Y. Reg. 4 (Feb. 9, 2022) ................ 4, 38, 40

DISEASE CONTROL AND PREVENTION*, Interim Clinical Considerations*
  *for Use of COVID-19 Vaccines in the United States*,
  https://www.cdc.gov/vaccines/covid-19/clinical-
  considerations/interim-considerations-us.html (last updated May
  12, 2025) ............................................................................................................... 52

May 24, 2023 letter from N.Y.S. Department of Health, available at
  https://www.health.ny.gov/facilities/adult_care/dear_administrator
  _letters/docs/dal_23-09.pdf (last visited Apr. 29, 2025) ................................... 38

## JURISDICTIONAL STATEMENT

Defendant-Appellee Northwell Health, Inc. (incorrectly captioned as "Northwell Health Systems") ("Northwell") acknowledges that this Court has appellate jurisdiction over the United States District Court for the Eastern District of New York's ("District Court") Decision and Order, dated September 24, 2024, granting Northwell's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) pursuant to 28 U.S.C. § 1291. A-254-274.[1] The District Court possessed subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs-Appellants' claims against Northwell brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and Plaintiff-Appellant Rose Taylor's claim against Northwell brought under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA").

The Notice of Appeal was timely filed on October 7, 2024. A-275-276.

## COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW

**I.** Did the District Court properly grant Northwell's Motion to Dismiss by applying the established legal precedent set forth in *Twombly/Iqbal*?

**Answer**: Yes

---

[1] References to "A-page(s)" are to the Plaintiffs-Appellants' Appendix, Dkt. No. 30-1. References to the "SA-page(s)" are to the Supplemental Appendix filed contemporaneously with Defendant-Appellee's Brief.

**II.** Did the District Court commit reversible error as to whether Section 2.61 ("DOH mandate") was *void ab initio*, where such relief was not sought?

**Answer**: No

**III.** Did the District Court properly hold that Northwell faced undue hardship if it granted Plaintiff-Appellants' exemption requests causing Northwell to violate Section 2.61 ("DOH mandate")?

**Answer:** Yes

**IV.** Was Rose Taylor's individual ADA claim properly dismissed by the District Court?

**Answer**: Yes

## <u>STATEMENT OF THE CASE</u>

### I. The New York State Department of Health Mandate

On August 26, 2021, the New York State Department of Health issued an emergency rule, codified at N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (2021) applicable to health care institutions (hereinafter "DOH Mandate"). The DOH Mandate stated that covered healthcare entities must "continuously require" employees to be fully vaccinated against COVID-19 if they "engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." 10 N.Y.C.R.R. § 2.61 (a)(2), (c).

The DOH Mandate contained a limited exception only for employees for whom a "COVID-19 vaccine [would be] detrimental to" their health "based upon a pre-existing health condition," in accordance "with generally accepted medical standards." *Id.* at § 2.61(d)(1). This required that any medical exemption request be supported with a certification by a licensed physician or certified nurse practitioner issued in accordance with generally accepted medical standards, including recommendations of the Advisory Committee on Immunization Practices ("ACIP") of the U.S. Department of Health and Human Services. *Id. See also We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 289 (2d Cir. 2021) ("*We the Patriots I*"), *cert. denied*, 142 S. Ct. 2569 (2022). The DOH Mandate did *not* permit religious exemptions. *See* 10 N.Y.C.R.R. § 2.61, *generally*.

The express terms of the DOH Mandate applied to "covered entities" which included "any facility or institution included in the definition of 'hospital' in Section 2801 of the Public Health Law, including but not limited to general hospitals, nursing homes, and diagnostic treatment centers" along with other agencies, hospices, or adult care facilities. *See* 10 N.Y.C.R.R. § 2.61(a)(1). *See also We the Patriots I*, 17 F.4th at 275 ("Section 2.61 applies more broadly, to all hospitals, nursing homes, diagnostic and treatment centers, home healthcare agencies and similar programs, hospices, and adult daycare facilities."). The DOH Mandate, enacted pursuant to Public Health Law §§ 2800 and 2803, carried sanctions including fines, penalties, and loss of licensure for non-compliance. *See* N.Y. PUB.

HEALTH L. § 2806(1)(a) (2021) ("A hospital operating certificate may be revoked, suspended, limited or annulled … [if] the hospital has failed to comply with the provisions of [Article 28] or rules and regulations promulgated thereunder"). *See also* 2022 N.Y. Reg. Text 601321, 44 N.Y. Reg. 4 (Feb. 9, 2022).

As New York's largest healthcare system, there is no dispute that Northwell was required to comply with the DOH Mandate, including requiring and maintaining proof of employee vaccination or medical exemption if the employee fell within the scope of the regulation. *See* 10 N.Y.C.R.R. § 2.61 (a)(2), (c), (d); *see also* A-206 ¶3. Failure to comply with the DOH Mandate would expose Northwell to potential penalties, including being enjoined from continuing to permit employees to work absent proof of vaccination or exemption, or otherwise fined, penalized, or lose their operating licenses. *See* N.Y. PUB. HEALTH L. § 2806(1)(a). *See also Does 1-2 v. Hochul*, No. 22-2858, 2024 WL 5182675, at *4 (2d Cir. Dec. 20, 2024) (finding violation of the DOH Mandate "would have subjected the Private Defendants to financial penalties or a suspension or revocation of their operating licenses") (citing N.Y. PUB. HEALTH L. §§ 12, 2806). To comply with the DOH Mandate, Northwell required employees to become vaccinated beginning in August 2021. *See* A-056-57 ¶¶38-41.

Despite the clear mandates, many challenges to the law were made. This Court upheld the Mandate against several constitutional challenges brought by healthcare workers who were terminated from employment based on their refusal to get

vaccinated for purported religious reasons. *See We the Patriots I*, 17 F.4th 266, *generally*. In doing so, this Court confirmed that the DOH Mandate provided for an "***objectively defined category*** of people" to whom the vaccine requirement does not apply:

> [E]mployees who present a certification from a physician or certified nurse practitioner attesting that they have a pre-existing condition that renders the vaccination detrimental to their health, in accordance with generally accepted medical standards, such as those published by ACIP, for the period during which the vaccination remains detrimental to their health.

*We the Patriots I*, 17 F.4th at 289 (citing 10 N.Y.C.R.R. § 2.61(d)(1)).

In a subsequent clarifying opinion, this Court confirmed that under the DOH Mandate, employees are not permitted to seek a "blanket religious exemption" while remaining "covered personnel" within the scope of the DOH Mandate. *See We the Patriots USA, Inc. v. Hochul*, 17 F.4th 368, 370 (2d Cir. 2021) ("*We the Patriots II*"). Rather, a religious accommodation is possible only by employing a worker "in a manner that removes them from the Rule's definition of 'personnel.'" *Id.* No other religious accommodation would permit a healthcare worker – such as Plaintiffs – to continue working as covered personnel while unvaccinated. *See id.*

On January 13, 2023, the Supreme Court in Onondaga County, New York struck down the DOH Mandate, finding that the regulation was beyond the Department of Health's rule-making authority, violated the separation of powers doctrine, and was arbitrary and capricious. *See Med. Prof. for Informed Consent v.*

*Bassett*, 185 N.Y.S.3d 578, 582, 585-86 (N.Y. Sup. Ct. 2023). The enforcement ruling was stayed pending appeal to the Appellate Division of the New York Supreme Court, Fourth Department. *See* Order, *Med. Prof. for Informed Consent, Inc. v. Bassett*, No. CA 23-00161, 2023 WL 2344242 (N.Y. App. Div. Feb. 27, 2023).[2] On October 4, 2023, while that appeal was pending, the Department of Health repealed the DOH Mandate. *See* 45 N.Y. Reg. 22 (Oct. 4, 2023). The appeal to the Fourth Department was dismissed as moot given the repeal of the DOH Mandate. *See Med. Prof. for Informed Consent, Inc. v. Bassett*, 220 A.D.3d 1157, 197 N.Y.S.3d 785 (N.Y. App. Div. 2023). This Court subsequently determined that the repeal of the DOH Mandate "in October 2023 does not change [the] analysis … [of] the events at issue [which] occurred in 2021." *D'Cunha v. Northwell Health Systems*, No. 23-476-cv, 2023 WL 7986441, at *3 n.4 (2d Cir. Nov. 17, 2023). In so doing, this Court held "the burden placed on an employer from violating a state law, like the [DOH] Mandate" amounted to undue hardship for Northwell in affirming the dismissal of plaintiff's religious discrimination claim. *Id.*, at *3.

## II.    Procedural Background

Plaintiff-Appellants Cynthia Braccica, Jennifer Browne, Andrea DePalma, Dennise Johnson, and Marisol Ventrice (collectively "*Braccica* Plaintiffs") commenced this action on November 2, 2022 by filing a Complaint against

---

[2] Contrary to the assertions in Plaintiffs' Opening Brief, the matter was never presented to New York State's Court of Appeals. *See* Opening Br. 17.

Northwell in the United States District Court for the Eastern District of New York under civil docket number 2:22-cv-06687, alleging Religious Discrimination in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.* and Genetic Information Discrimination in violation of GINA, 42 U.S.C. § 2000ff-1(b). *See* A-1-35.

Plaintiff-Appellants Irina Abramov, Mauren Alchermes, Dawn Alois, Joy Altrui, Angela Bastone-Pergola, Evgeniya Batalla, Diane Bono, Katherine Carney, Karen Ferrando, Carmela Fiorica, Eileen Hagan, Sarah Haseney, Maryann Hojnowski, Katherine Kougentakis, Nilberk Kurt, Karen La Rosa, Debra Lanahan, Nadira Mahabir, Veronica Newton a/k/a Veronica Webb, Katlyn Pastor, Rebecca Ramirez, Julia Shaw, Rose Taylor, Mia Torres, and Michele Woodward-Lawton (collectively "*Abramov* Plaintiffs") commenced an action on December 12, 2022 by filing a Complaint against Defendant in the United States District Court for the Eastern District of New York under civil docket number 2:22-cv-07538. *See* A-207-208 ¶¶7-9. The *Abramov* Plaintiffs collectively asserted two causes of action: Religious Discrimination in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.* and Disparate Treatment in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.* A-208 ¶8. Individual Plaintiff-Appellant Rose Taylor ("Taylor") also asserts a claim for disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq. See* A-066-68 ¶¶109-126 ("Count III").

With leave of the District Court, the *Braccica* Plaintiffs and the *Abramov* Plaintiffs (collectively "Plaintiffs") then filed the Amended Complaint against Northwell on May 17, 2023. *See* A-10-11. *See also* A-043-170.

## III.   Factual Background and Allegations

Plaintiffs, alleged former healthcare workers at Northwell, assert claims under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") for discrimination under failure to accommodate and disparate treatment, after their alleged employment at Northwell ended when they refused to be vaccinated against COVID-19, in contravention to the DOH Mandate, the New York State emergency regulation mandating COVID-19 vaccinations for covered personnel in the healthcare industry (the "DOH Mandate"). *See* 10 N.Y.C.R.R. § 2.61. *See also* A-064-66 ¶¶87-100 ("Count I"); *id.* ¶¶101-08 ("Count II").

Plaintiffs assert they were healthcare workers who worked for various sites or facilities within the Northwell system and were employees of Northwell.[3] *See* A-046-55 ¶¶4-33; *see also* A-070-170 ¶3. Northwell began requiring personnel, including Plaintiffs, to become vaccinated against COVID-19 in August 2021. *See* A-056-57 ¶¶38-41. Plaintiffs allege Northwell created a means for employees to request a religious exemption from vaccination, but not a religious accommodation. A-057-58 ¶¶42-44, 47. Nonetheless, Plaintiffs submitted religious accommodation

---

[3] For purposes of this Motion, Northwell does not dispute this assertion. *See* A-207 ¶4.

requests to be excused from the COVID-19 vaccination requirement. *See* A-061 ¶67.[4] Specifically, Plaintiffs requested and allege that Northwell should have "accommodated" them by permitting them to work while unvaccinated and continuing the weekly testing, masking, and social distancing "mitigation protocols" that were in place before the vaccine became available. A-061, 063 ¶¶63-66, 83-84. Northwell terminated Plaintiffs from their employment after Plaintiffs' religious accommodation requests were denied. *See* A-063-64 ¶¶85-86. Plaintiffs admit "granting an exemption on the basis of religion remained unlawful" under the DOH Mandate, which Northwell relied upon in denying Plaintiffs religious accommodation requests. *See* A-060 ¶60.

Separately, in support of her ADA claims, Taylor alleges that Northwell "knew [she] could not receive the COVID-19 vaccine without it impacting [her] health … because each and every COVID-19 vaccine available could not have been made, produced, derived from or created without the use of aborted fetal cell line tissue." *See* A-160 ¶¶6-7. Specifically, Taylor alleges her treating physician determined her "pre-existing condition placed [her] in a position where the risk caused if [she] were to receive the COVID-19 vaccine outweighed any potential benefit of the vaccine." *Id.* at ¶5. Taylor also alleges her "disability" (a "neurological

---

4 *See also* A-071 ¶¶4, 8; A-076 ¶10; A-080 ¶10; A-084 ¶10; A-088 ¶9; A-092 ¶10; A-096 ¶10; A-100 ¶10; A-104 ¶10; A-108 ¶10; A-112 ¶10; A-116 ¶10; A-120 ¶10; A-124 ¶10; A-128 ¶10; A-133 ¶11; A-137 ¶9; A-141 ¶9; A-144 ¶10; A-149 ¶8; A-152 ¶10; A-156 ¶10; A-161 ¶12; A-164 ¶10; A-168 ¶10.

disorder") "substantially limits one or more of [her] major life activities, ***such as*** working, caring for herself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working." A-066 ¶111 (emphasis added). Taylor does not define her alleged disability beyond "neurological disorder," she does not identify how it impacted her ability to work, she does not plead any facts that describe how Northwell was purportedly aware of her alleged disability, and she does not include any factual allegations to support her claim that Northwell had reportedly previously accommodated her. *See* A-043-158 *generally*; *see also* A-159-62, *generally*.

## IV.   The District Court's Decision

On September 24, 2024, the District Court issued a Decision and Order granting Northwell's Motion to Dismiss, dismissing all three causes of action against Northwell. *See* A-254-74 ("Decision"), *generally*.

In dismissing Plaintiffs' claim for disparate treatment under Title VII, the District Court found that Plaintiffs failed to plausibly allege a *prima facie* claim against Northwell. Specifically, the District Court found the Plaintiffs were no longer qualified for their positions as covered "personnel" as defined by the DOH Mandate given, when the DOH Mandate went into effect, the Plaintiffs "did not receive a vaccine or exemption. Accordingly, the amended complaint fails to allege that Plaintiffs were qualified for their position." *See* A-262 n.11. The District Court also determined that Plaintiffs failed to plausibly allege factual support for "a

minimal inference of discriminatory motive" necessary to withstand a motion to dismiss. *See* A-262-63 (quoting *Tandian v. State Univ. of N.Y.*, 698 F. Supp. 3d 425, 438 (N.D.N.Y. 2023)). In reaching this determination, the District Court noted that, outside of the conclusory allegations contained within the Complaint, Plaintiffs failed to offer any factual averments to support their conclusory claims – including within the long personal statements by five of the Plaintiffs in the body of the Complaint or within the 25 declarations attached to the Complaint by the remaining Plaintiffs. *See* A-263-64. Nor did Plaintiffs identify any similarly situated employees who were treated differently. *See* A-264. Rather, Plaintiffs alleged that Northwell never contested the validity of their religious beliefs. *See* A-263.

Plaintiffs' Title VII religious discrimination claim also failed under a failure to accommodate theory of liability. *See* A-264-68. Plaintiffs asked Northwell to violate the DOH Mandate so they could continue working while "wearing face masks and receiving weekly Covid-19 tests" while being unvaccinated. *See* A-265. In other words, Plaintiffs requested a religious exemption from the DOH Mandate – an accommodation based upon their religious beliefs that did not remove them from the scope of covered "personnel" under the DOH Mandate. *Id.* The District Court followed this Court's decision in *D'Cunha* and numerous other Courts throughout this Circuit in holding that the Plaintiffs' requested accommodation would amount to an undue hardship. *See* A-266-67.

Finally, the District Court noted Taylor failed to "address the deficiencies raised" by Northwell, but rather, merely provided a "recitation of the conclusory facts already set forth in the amended complaint," before finding Taylor failed to state a plausible claim for relief under the ADA. *See* A-269. The District Court found Taylor failed to plausibly allege three of the four *prima facie* elements to state a plausible claim under the ADA. *See* A-268-74. Even if Taylor had plausibly alleged the essential elements to state a *prima facie* claim under the ADA against Northwell – her requested accommodation would amount to an undue hardship. *See* A-274 n.17.

## SUMMARY OF THE ARGUMENT

Plaintiffs' Opening Brief is premised upon an issue that is not before the Court on appeal – whether the DOH Mandate was lawfully enacted. *See* Opening Br. 7 ("Plaintiffs-Appellants timely filed their notice of appeal on October 7, 2024, arguing that Section 2.61 is unconstitutional and void *ab initio*, and that the District Court erred in holding that compliance with an unlawful mandate constituted an undue hardship.").[5] Rather than discussing the merits of the District Court's Decision or the issues that were presented to the District Court in Plaintiffs' lawsuit – i.e., Plaintiffs' employment discrimination claims – Plaintiffs seek the very same declaratory relief that this Court *has already* decided.

---

[5] *See also* Opening Br. Sect. III.A (arguing DOH Mandate is unconstitutionally vague).

As this Court has already found in *D'Cunha* and *Does 1-2*, requiring an employer to violate the DOH Mandate constituted an undue hardship even after the Supreme Court's decision clarifying the standard in *Groff v. DeJoy*, 600 U.S. 447 (2023) ("*Groff*"). *See, e.g.*, *D'Cunha*, 2023 WL 7986441, at *3 ("Our conclusion is consistent with the Supreme Court's clarification of the 'undue hardship' standard in *Groff* because the burden placed on an employer from violating a state law, like the State Mandate in this case, is both 'excessive' and 'unjustifiable.'"); *Does 1-2*, 2024 WL 5182675, at *4 ("Even under the heightened standard for undue hardship recently set forth in *Groff*, the risk of these potential penalties more than suffices to demonstrate that the Private Defendants were subject to such hardships here.")

Where, as here, Plaintiffs allege they were terminated "because of [their] refusal to get the COVID-19 vaccine … [their] amended complaint lacks even 'minimal support for the proposition,' at the motion to dismiss stage" to find an inference of discrimination sufficient to survive a Rule 12(b)(6) motion. *See D'Cunha*, 2023 WL 7986441, at *4 (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015)). *See also* A-263 ("The Complaint alleges that Northwell 'refused to provide Plaintiffs with a reasonable religious accommodation on the basis that doing so would impose upon [Northwell] an undue hardship.'") (quoting Am. Compl. ¶55). Moreover, Plaintiffs *concede* that they were terminated as a result of the refusal to be vaccinated – not their religious beliefs. *See* Opening Br. 6 ("Throughout September and October of 2021, Plaintiffs were terminated because

13

their sincerely held religious beliefs prohibited them from complying with Northwell's mandatory vaccination policy.").

Finally, Taylor waived her right to appeal the dismissal of her discrimination claim brought pursuant to the ADA. *See* A-269. Even if not waived, the District Court properly dismissed Taylor's ADA discrimination claim as Taylor's claim is premised entirely on formulaic and conclusory allegations that are wholly insufficient to state a plausible claim for relief.

## **STANDARD OF REVIEW**

This Court reviews a district court's dismissal of a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) *de novo*. *See, e.g., Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007); *Burns v. City of Utica*, 590 F. App'x 44, 47 (2d Cir. 2014).

To survive a motion to dismiss, a complaint must contain factual allegations that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleadings must contain more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions" without "further factual enhancement." *Id.* (internal citation and brackets omitted). Rather, they must nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Thus, a motion to dismiss "should be granted 'where the well-pleaded facts do not permit the court to infer more than the mere

14

possibility of misconduct." *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).[6] "When reviewing the district court's decision, [this Court is] permitted to consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, [or] matters of which judicial notice may be taken.'" *Does 1-2*, 2024 WL 5182675, at *1 (quoting *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014)).

Moreover, where an appellant raises arguments for the first time on appeal, this Court may decline to exercise its discretion to consider the arguments for the first time on appeal. *See, e.g.*, *Doe v. Franklin Square Union Free Sch. Dist.*, 100 F.4th 86, 102-03 (2d Cir. 2024) (declining to consider arguments with respect to claims raised for the first time on appeal), *cert. denied*, 145 S.Ct. 570 (2024). *See also Farang v. XYZ Two Way Radio Serv., Inc.*, No. 22-1795, 2023 WL 2770219, at *2 (2d Cir. Apr. 4, 2023) ("[W]e have routinely affirmed the district court's dismissal of a plaintiff's claims when the plaintiff 'did not discuss them in his opposition to [the defendant]'s motion to dismiss.'") (internal citations omitted).

---

[6] This is true even in the caselaw cited by Plaintiffs. *See* Opening Br. 8 (citing *Krys v. Pigott*, 749 F.3d 117 (2d Cir. 2014)). In *Krys*, this Court affirmed the dismissal of the Plaintiff's Amended Complaint which asserted claims under FED. R. CIV. P. 9(b). 749 F.3d at 121, 129. Northwell does not argue that Plaintiffs' claims here should be evaluated under FED. R. CIV. P. 9(b). Rather, simply points out that there is no disagreement that, "[this Court] '[is] not bound to accept as true a legal conclusion couched as a factual allegation,'; nor [is this Court] required to accept as true allegations that are wholly conclusory." *Krys*, 749 F.3d at 128 (internal citations omitted). *See also Graziano v. Pataki*, 689 F.3d 110, 114-15 (2d Cir. 2012) (affirming dismissal of the plaintiffs' complaint on a Rule 12(c) motion where the "Plaintiffs' allegations are insufficient") (cited in Opening Br. 8).

## ARGUMENT

### I.  The District Court Applied the Appropriate Standard in Dismissing Plaintiffs' Complaint

Contrary to Plaintiffs' position, the District Court applied the appropriate standard in granting Northwell's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). As this Court has stated:

> While we are required to assume the truth of the "well-pleaded factual allegations" in the complaint, that obligation is "in applicable to legal conclusions," such as "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements."

*Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678-79). Rather, "[l]egal conclusions, standing alone, 'are not entitled to the assumption of truth' unless 'supported by factual allegations' that 'plausibly give rise to an entitlement to relief' – a 'context-specific' determination grounded in 'judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). In fact, neither the District Court nor this Court is required "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. *See also Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90-91 (2d Cir. 2021) (The Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations."). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet the plausibility standard. *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. *Accord*

16

*We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2682 (2024). It is not enough for Plaintiffs to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Although factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted 'by more specific allegations in the Complaint.'" *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151-52 (2d Cir. 2014) (internal citation omitted).

Plaintiffs spend a significant portion of their brief arguing that the District Court improperly made inferences favorable to Northwell and ignored Plaintiffs' factual allegations. *See* Opening Br. 8-15. The District Court did no such thing.

*First*, as noted above, conclusory allegations or legal conclusions couched as factual allegations are not given deference in evaluating a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). *See, e.g.*, *Iqbal*, 556 U.S. at 678. Yet, this is exactly what Plaintiffs did in their Amended Complaint. *See, e.g.*, A-263 (quoting Am. Compl. ¶106); A-270 (quoting Am. Compl. ¶111); A-273 (quoting Am. Compl. ¶¶117-123). Despite having the opportunity to file an amended complaint with 25 individual

declarations in support of their allegations, Plaintiffs failed to include any averments that provide a factual basis for their otherwise conclusory allegations against Northwell. *See id.* This is the appropriate pleading standard for Plaintiffs' claims.

*Second*, the District Court is permitted to consider the relevant law, regulations, and case law in effect at the time – which is what the District Court did. For example, the District Court appropriately noted:

- "Section 2.61 eliminated the religious exemption that was provided in the Order of Summary Action." *See* A-256 (citing 10 N.Y.C.R.R. § 2.61(a)(2); *We the Patriots I*, 17 F.4th at 274; Am. Compl. at 2);

- "Section 2.61 defines 'personnel' as any employees or affiliates of a covered entity 'who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease.'" *See* A-265 n.12 (citing 10 N.Y.C.R.R. § 2.61(a)(2));

- "Covid-19 vaccination was a qualification of employment." *See* A-272 (citing *We the Patriots II*, 17 F.4th at 370; 10 N.Y.C.R.R. § 2.61(a)(2), (c); *Broecker v. New York City Dept' of Educ.*, 585 F. Supp. 2d 299, 316-17 (E.D.N.Y. 2022); *We the Patriots I*, 17 F.4th at 294); and

- "Courts in this circuit have dismissed … Title VII claims brought against healthcare employers with COVID-19 vaccination mandates, on the basis that allowing plaintiffs the religious exemptions they sought would have created an undue hardship on the employer by forcing them to violate Section 2.61." A-266 (quoting *Haczynska v. Mount Sinai Health Sys.*, 23-CV-3091 (MKB), 2024 WL 3178639, at *13 (E.D.N.Y. June 26, 2024)).

It is neither Northwell's nor the District Court's burden to ensure that Plaintiffs understand the relevant facts or law when they draft their Complaint or present arguments to the Court.

*Third*, the District Court is permitted to consider documents incorporated by reference and/or filed with the Complaint – which is all the District Court did here. *See, e.g.*, *Nicosia*, 834 F.3d at 230. The District Court found that Plaintiffs were able to submit their religious accommodation requests to Northwell – as it was not only alleged in the Complaint, but also included in the Plaintiffs' declarations. *See, e.g.*, A-047-49, 51, 54-55 ¶¶11, 12, 14, 20, 32.[7] It is undisputed that conclusory allegations may be disregarded in light of more specific allegations found within the Complaint and Plaintiffs' Declaration – which is exactly what the District Court did with respect to Plaintiffs' claims about submitting religious accommodation requests. *See* A-258 n.8. *See also DPWN Holdings*, 747 F.3d at 151-52.

Similarly, Plaintiffs' own averments that they were terminated because of their failure to comply with the DOH Mandate – not because of their religious beliefs undermine Plaintiffs' otherwise conclusory allegations. *See* A-263 (citing Am. Compl. ¶¶55, 57, 106). Plaintiffs cannot now seek to use an alleged truncated statement from Northwell's CEO without providing any further context to shore up their claims of discrimination. *See* Opening Br. 10 (citing Am. Compl. ¶48). This ambiguous, one-off remark without any causal connection to *any* protected class is simply insufficient to plead even a minimal inference of discriminatory motivation. *See, e.g.*, *McKenzie v. Big Apple Training Inc.*, No. 1:22-CV-9554-GHW, 2024 WL

---

[7] *See also* note 4 *supra*.

1746057, at *8 (S.D.N.Y. Apr. 23, 2024) (declining to infer discriminatory intent where reliance upon an otherwise ambiguous comment required speculation).

Plaintiffs' threadbare argument with respect to the District Court allegedly applying the "wrong standard" mirrors the same conclusory allegations found in the Amended Complaint. Accordingly, the District Court's decision to dismiss the Amended Complaint should be affirmed, in full.

## II.    The District Court Correctly Dismissed Plaintiffs' Title VII Claims

The District Court properly dismissed Plaintiffs' first and second causes of action under Title VII as Plaintiffs failed to plausibly allege the necessary elements to withstand a motion to dismiss.[8] *See* A-261-266. "A plaintiff may claim a violation of religious discrimination under Title VII under theories of either denial of reasonable accommodation or disparate treatment." *Goldschmidt v. N.Y.S. Affordable Hous. Corp.*, 380 F. Supp. 2d 303, 310 (S.D.N.Y. 2005); *see, e.g.*, *Cosme v. Henderson*, 287 F.3d 152 (2d Cir. 2002) (denial of reasonable religious accommodation); *Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004) (disparate treatment theory). Here, Plaintiffs failed to plausibly allege they were qualified for their positions, that Northwell acted with discriminatory animus, or that Plaintiff's

---

[8] Counts I and II of the Amended Complaint are legally indistinct: both allege Northwell discriminated against Plaintiffs by failing to accommodate their religious beliefs. In Count II, Plaintiffs add a conclusory allegation regarding Northwell's purported intent. *See* A-066 ¶106. For benefit of the doubt, Northwell addresses Plaintiffs' causes of action as a claim for religious discrimination based under a failure-to-accommodate theory (Count I) and religious discrimination under disparate treatment theory (Count II).

requested accommodation – a blanket exemption from the DOH Mandate – would not result in undue hardship for Northwell.

### A. Plaintiffs' Failed to State a *Prima Facie* Claim for Disparate Treatment

Contrary to the standard cited by Plaintiffs, under a theory of disparate treatment, a complaint of discrimination "must be plausibly supported by facts alleged … that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311; *accord Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (citing 42 U.S.C. § 2000e–2(a)(1)) (at a minimum, Title VII requires a plaintiff asserting a discrimination claim to allege: "(1) the employer discriminated against [her] (2) because of [her] race, color, religion, sex, or national origin."). *See also* Opening Br. 9.

"A disparate treatment claim … may be established by showing either (1) adverse job action under circumstances giving rise to an inference of discrimination on the basis of religion, or (2) harassment on the basis of religion that amounts to a hostile work environment." *Goldschmidt*, 380 F. Supp. 2d at 310. Here, Plaintiffs only allege the former. *See* A-066 ¶105.

To plead a disparate treatment claim based on religious discrimination under Title VII, the "well-pleaded factual allegations [must] plausibly give rise to an

inference of unlawful discrimination." *Lowman v. NVI LLC*, 821 F. App'x 29, 31 (2d Cir. 2020) (quoting *Vega*, 801 F.3d at 87). The District Court properly found Plaintiffs failed to plausibly allege they were qualified for their position *or* discriminatory intent on the part of Northwell. *See* A-262-264.

### 1. The District Court Correctly Found That Plaintiffs Were Not Qualified for Their Positions

To be qualified for a position, "an employee must not only be capable of performing the work; she must also satisfy the employer's conditions of employment." *Martin v. City Univ. of New York*, No. 17 CIV. 6791 (KPF), 2018 WL 6510805, at *8 (S.D.N.Y. Dec. 11, 2018) (internal quotations omitted). *See also Brown v. South Shore University Hosp.*, No. 2:23-cv-6374 (NJC)(ST), --- F. Supp. 3d ---, 2025 WL 71730, at *9 (E.D.N.Y. Jan. 10, 2025) ("To be qualified for a position under Title VII, an employee must satisfy 'the criteria the employer has specified for the position.'") (quoting *Scé v. City of New York*, No. 20-3954, 2022 WL 598974, at *1 (2d Cir. Mar. 1, 2022)). A plaintiff asserting an employment discrimination claim must be able to demonstrate that he or she was qualified for the position at issue. *See, e.g.*, *Williams v. MTA Bus Co.*, No. 17CV7687 (DF), 2020 WL 1922911, at *7 (S.D.N.Y. Apr. 20, 2020), *reconsideration denied*, No. 17CV7687 (DF), 2020 WL 4904058 (S.D.N.Y. Aug. 20, 2020) (same). "[E]mployers have broad discretion to determine the necessary job qualifications," and "[i]t is well settled that, in determining whether an employee is qualified for a position, courts

look to the criteria the employer has specified for the position." *Sulehria v. City of New York*, 670 F. Supp. 2d 288, 309 (S.D.N.Y. 2009).

As this Court has already explained, one such employment requirement includes "[v]accination [against COVID-19 as] a condition of employment in the healthcare field." *We the Patriots I*, 17 F.4th at 293-94. *See also Beickert v. New York City Dep't of Educ.*, No. 22-CV-5265 (DLI)(VMS), 2023 WL 6214236, at *4 (E.D.N.Y. Sept. 25, 2023) ("Courts in this Circuit have found that vaccination against COVID-19 … is a proper condition of employment.") (collecting cases). Plaintiffs' perfunctory argument that they were qualified for their jobs "with or without accommodations, such as testing and masking" as grounds that the District Court erred is wholly disingenuous given the legal landscape at the time of their terminations. Opening Br. 12-13. Any individual falling within the scope of the DOH Mandate as covered "personnel" (such as Plaintiffs) was required to be vaccinated or receive a medical exemption request to continue in their roles as covered personnel. *See* 10 N.Y.C.R.R. § 2.61; *We the Patriots II*, 17 F. 4th at 370 (noting "it may be *possible* under the Rule for an employer to *accommodate* – not *exempt* – employees with religious objections, by employing them in a manner that removes them from the Rule's definition of 'personnel'"). *See also* A-046-55 ¶¶4-33; A-070-170 ¶3.

Once Plaintiffs refused to be vaccinated against COVID-19, they no longer met a basic qualification to hold their positions – by law, per Northwell's policy, and

as a matter of health and safety – and cannot, on that basis, maintain a claim for religious discrimination. *See*, *e.g.*, *D'Cunha v. Northwell Health Sys.*, No. 1:22-cv-0988 (MKV), 2023 WL 2266520, at *3-4 (S.D.N.Y. Feb. 28, 2023) (finding Northwell's COVID-19 vaccination requirement an "appropriate" condition of employment and where plaintiff failed to receive a vaccine or exemption, her "Complaint fail[ed] to allege she was 'qualified for her position.'"), *aff'd*, No. 23-476-cv, 2023 WL 7986441 (2d Cir. Nov. 17, 2023). As noted in a recent decision:

> District Courts in this Circuit have found that were a hospital imposed a COVID-19 vaccination requirement as an employment requirement and an employee failed to comply with that requirement, the employee was not qualified for their position for purposes of bringing a Title VII employment discrimination claim.

*Brown*, 2025 WL 71730, at *10 (collecting cases).

Plaintiffs' footnoted argument that they did not "refuse" to be vaccinated because they did not have a "choice" is an illogical non-starter. *See* Opening Br. 13 n.8. Plaintiffs' unvaccinated status rendered them unqualified to continue working in their positions covered by the DOH Mandate – and their "power of choice" argument has already been foreclosed by this Court. *See We the Patriots I*, 17 F.4th at 293-94 ("Although individuals who object to receiving the [COVID-19] vaccines on religious grounds have a hard choice to make, they do have a choice.") (emphasis added). *See also* A-272 n.15.

24

**2.    The District Court Correctly Found That Plaintiffs' Conclusory Allegations Were Insufficient to Plausibly Allege Discriminatory Intent**

Plaintiffs waived their ability to argue they plausibly alleged Northwell acted with discriminatory animus before the District Court and, accordingly, this Court need not consider Plaintiffs' arguments regarding the same. *See Doe*, 100 F.4th at 102-03.[9] To the extent this Court considers Plaintiffs' litany of vague, conclusory arguments to cobble together minimal support that Northwell discriminated against Plaintiffs based upon their religion, Plaintiffs' own allegation defeats their claims. *See D'Cunha*, 2023 WL 2266520, at *2 (holding plaintiff failed to raise an inference of discrimination where she alleged she was terminated for refusing to be vaccinated).

"At the motion to dismiss phase of litigation, the plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation; she need not plausibly allege that the adverse employment action was attributable to discrimination.'" *See* A-262-263 (quoting *Tandian*, 698 F. Supp. 3d at 438). This does not mean that Plaintiffs can rely upon broad, conclusory allegations that are undermined by more specific, factual allegations. *See DPWN Holdings*, 747 F.3d at 151-52. Instead, just as the District Court did here, determining whether a complaint

---

[9] In fact, Plaintiffs even acknowledged the issue was before the District Court but failed to make any arguments in support of their claims. *Compare* A-223-24 ("Accordingly, only two questions remain at issue … (2) whether Plaintiffs have alleged Northwell discriminated against them based upon their sincerely held religious beliefs.") *with* A-213-237, *generally*.

states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Plaintiffs admit Northwell terminated their employment because, at the relevant time, the DOH Mandate did not allow for a religious exemption, *not because of their religious beliefs*. *See* A-060 ¶57 ("[Northwell] relied upon Title 10 N.Y. Comp. Codes R. & Regs. § 2.61," which "eliminated an employee's ability to request a religious exemption …"). In fact, Plaintiffs *allege* that Northwell "did not contest the validity of Plaintiffs' asserted religious beliefs" and prior to the enactment of the DOH Mandate, permitted Plaintiffs "to work in the exact same capacity and with the exact same reasonable accommodation [Plaintiffs] requested." *See* A-047-49, 51, 54, 59-60 ¶¶11-12, 14, 20, 32, 55, 57.

Where, as here, Plaintiffs plead that they were discriminated against because of their vaccination status their disparate treatment claims are subject to dismissal at the pleadings stage. *See Lowman*, 821 F. App'x at 31 (to survive a motion to dismiss, a plaintiff must plead she was discriminated against "because of [her] … religion"). It is well settled that dismissal of discrimination claims is warranted at the pleading stage where a plaintiff does "not allege that she was discriminated against because of her religion." *Sealey v. Affiliated Comput. Servs., Inc.*, No. 11-CV-489S, 2012 WL 729217, at *3 (W.D.N.Y. Mar. 6, 2012), *aff'd* 522 F. App'x 35 (2d Cir. 2013). *See also Reyes v. Westchester Cty. Health Care Corp.*, No. 21-0410, 2021 WL 4944285, at *4 (2d Cir. Oct. 25, 2021) (affirming dismissal where the plaintiff failed

to allege that her employer discriminated against her "because of" her protected class). This continues to be true in evaluating disparate treatment claims based upon an employee's failure to get vaccinated against COVID-19. *See D'Cunha*, 2023 WL 7986441, at *4 (affirming dismissal of discrimination claims where the complaint lacked "even 'minimal support for the proposition,' at the motion to dismiss stage, that Defendant discharged [the plaintiff because of her protected class], rather than her status as an unvaccinated, patient-facing resident.") (quoting *Littlejohn*, 795 F.3d at 311).

Plaintiffs' admission that they were terminated due to their own failure to get vaccinated against COVID-19 is fatal to their claim. *See D'Cunha*, 2023 WL 2266520 at *2 (holding plaintiff failed to raise an inference of discrimination where she alleged she was terminated for refusing to be vaccinated, not due to her religion); *Billings v. N.Y. State Dept. of Corr. & Cmty. Supervision*, No. 19-cv-11796 (NSR), 2021 WL 4150925, at *6 (S.D.N.Y. Sept. 10, 2021) (same).

Finally, Plaintiffs admittedly sought religious "accommodation" that would keep them working as covered "personnel" within the scope of the DOH Mandate. *See, e.g.*, A-059 ¶53 ("Plaintiffs nevertheless submitted religious accommodation requests …"). However, they sought a religious accommodation that kept them within the scope of the DOH Mandate. *See, e.g.*, A-059, 63 ¶¶56, 83-84 (alleging "masking and weekly testing" were reasonable accommodations). *See also* A-047-51, 54-55 ¶¶11-12, 14, 20, 32 (requesting accommodation "to work in the exact same

27

capacity with the exact same reasonable accommodation … requested" by individual plaintiffs). In other words, Plaintiffs sought an exemption from the DOH Mandate based upon their religious beliefs – which was not permitted under law. *See We the Patriots II*, 17 F. 4th at 370 ("Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer – in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated.").

Plaintiffs' remaining arguments are based upon conclusory allegations contained within the Complaint (as the District Court noted) *or* are not related to Plaintiffs' religious beliefs. *See* Sect. I, *supra*. Twenty-five of the Plaintiffs submitted declarations and the Amended Complaint contains lengthy statements with respect to the remaining five Plaintiffs. *See* A-047-51, 54-55 ¶¶11-12, 14, 20, 32. *See also* A-070-170 *generally*. However, the Amended Complaint (and accompanying declarations) are entirely devoid of any factual averments that any of the individual Plaintiffs experienced religious discrimination. *See* A-263-264 (citing Am. Compl. ¶¶55, 57). *See also* A-070-170 *generally*.

Nor do the Plaintiffs "identify any similarly situated employees who were treated differently in a way that suggests that the timing of the Defendant's denial of their request was discriminatory." *See* A-264.[10] However, conclusory allegations

---

[10] "Absent direct evidence, a plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of similarly situated employees but must show he was similarly situated in all material respects to the individuals with whom he seeks to compare himself." *Kueh v. New York*

that "all religious accommodation requests" were denied without any additional detail is insufficient to state a plausible claim for relief for disparate treatment under Title VII. *See, e.g.*, *Mumin v. City of New York*, No. 1:23-cv-03932 (JLR), --- F.Supp.3d---, 2024 WL 5146085, at *12 (S.D.N.Y. Dec. 17, 2024) (finding "the generality of these allegations" were insufficient to state plausible claim for relief and collecting cases).[11]

Accordingly, the District Court's decision should be affirmed, and Plaintiffs' Title VII religious discrimination claim based upon disparate treatment should be dismissed.

### B.    Plaintiffs Fail to State a Plausible Failure to Accommodate Claim

Plaintiffs repeated efforts to undermine the District Court's Decision based upon a wholesale ignorance of the realities of the DOH Mandate as applied to healthcare entities – such as Northwell – only serves to demonstrate the inherent weakness of their failure-to-accommodate claims. To establish a *prima facie* case of religious discrimination under a failure to accommodate theory, as Plaintiffs allege

---

*and Presbyterian Hosp.*, No. 23-CV-666 (VSB), 2024 WL 4882172, at *3 (S.D.N.Y. Nov. 25, 2024) (internal citations and quotations omitted).

[11] Plaintiffs allege this in their Opening Brief but do not include any similar allegation in their Complaint. *Compare* Opening Br. 14 *with* A-043-69 *generally*. Even this over generalized allegation is simply insufficient to allege discriminatory intent. *See, e.g.*, *Mumin*, 2024 WL 5146085, at *12. The fact that Plaintiffs assert that Taylor's medical exemption request was denied further undermines any inference of discriminatory intent. *See, e.g.*, *Sonora v. Cmty. Sys., Inc.*, Civil Action No. 1:17-cv-01444, 2018 WL 10483858, at *1 (E.D. Va. Apr. 6, 2018) (plaintiff failed to plead that a similarly situated individual outside of plaintiff's protected class was treated more favorably than him, because his alleged comparator was treated the same as him).

here, Plaintiffs must plausibly plead that: (1) they hold a sincere religious belief that conflicted with an employment requirement; (2) they informed their employer of the conflict; (3) their employer discriminated against them *because of* their religious beliefs by enforcing the employment requirement; and (4) as a result, they suffered an adverse employment action. *See Lowman,* 821 F. App'x at 31; *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006). In the context of religious accommodation claims, the plaintiff must demonstrate, at a minimum, that "the employer's desire to avoid the prospective accommodation [was] a motivating factor in [an employment] decision." *Lowman*, 821 F. App'x at 31 (internal quotation omitted).

The burden then shifts to the employer to show that it could not reasonably accommodate plaintiff without undue hardship on the conduct of the employer's business. *See* 42 U.S.C. § 2000e(j); *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 63 (1986). As this Court has explained, "Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer—in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated." *We the Patriots I*, 17 F.4th at 292.

### 1. Plaintiffs Failed to Plausibly Allege a *Prima Facie* Failure to Accommodate Claim Under Title VII

Plaintiffs failed to establish even a *prima facie* claim for failure-to-accommodate because Plaintiffs failed to allege that Northwell's "desire to avoid the prospective accommodation [was] a motivating factor in [an employment] decision."

30

*See* A-264 (quoting *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774-75 (2015)). Based upon the allegations *as pled*, the District Court found that "Plaintiffs have not plausibly alleged religious discrimination for failure to accommodate." A-265-266. Specifically, the Amended Complaint alleged:

- Plaintiffs were permitted to test weekly and mask prior to the enactment of the DOH Mandate; and

- Once the DOH Mandate took effect, Plaintiffs sought to continue in their roles as covered "personnel" under the DOH Mandate.

*See* A-059-61, 65 ¶¶56-60, 63, 96. In other words, prior to the DOH Mandate, Northwell accommodated the Plaintiffs' religious beliefs to the extent permitted by law. However, as Plaintiffs *themselves* admit, once the DOH Mandate took effect, *by law* Northwell could no longer accommodate the Plaintiffs' religious beliefs by allowing them to continue working in their positions as covered personnel while unvaccinated. *See* A-060, 63-64 ¶¶60, 85-86. Using "common sense" and the context-specific nature of the Plaintiffs' claims, the District Court appropriately found that Plaintiffs failed to plausibly allege Northwell's desire to avoid providing Plaintiffs with their requested accommodation (a blanket exemption) was the motivating factor in denying their accommodation requests. *See Iqbal*, 556 U.S. at 679.

## 2. Plaintiffs' Requested Accommodation Amounted to Undue Hardship Under Precedential Second Circuit Decisions

"An employer may raise a defense of undue hardship at the motion-to-dismiss stage 'if the defense appears on the face of the complaint.'" *Does 1-2*, 2024 WL 5182675, at *3 (quoting *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010)). As held by this Court, "Title VII does not obligate an employer to grant an accommodation that would cause 'undue hardship on the conduct of the employer's business.'" *We the Patriots II*, 17 F.4th at 370 (quoting 42 U.S.C. § 2000e(j)); *see also Lowman*, 821 F. App'x at 32 (accommodation in violation of state law imposes an undue hardship). Nor does Title VII "require [an employer] to provide the accommodation that Plaintiffs prefer." *We the Patriots II*, 17 F.4th at 370; *see also Cosme*, 287 F.3d at 158 (same).

Rather, as stated in the DOH Mandate and clarified by this Court, the *sole* available religious accommodation available under the DOH Mandate is one that would remove the healthcare worker from the scope of the DOH Mandate, i.e., move them to a form of employment that does not fall within the Mandate's definition of covered "personnel." *We the Patriots II*, 17 F.4th at 370. "Personnel" is defined as someone who might expose co-workers, patients, or the public to COVID-19. *See* 10 N.Y.C.R.R. § 2.61(c). Plaintiffs did not seek to be removed from the definition of "personnel" by alleging they should have been transferred to positions in which they would not expose co-workers, patients, or the public to COVID-19. They

contend they should have been permitted to continue working in their same positions, unvaccinated, while employing other "mitigation protocols," such as "wearing masks, socially distancing, and testing for COVID-19 on a weekly basis." A-061, 63 ¶¶63-66, 83, 84. This proposed "accommodation" (i.e., a blanket exemption to the vaccine requirement) would have required Northwell to violate the DOH Mandate. *See* 10 N.Y.C.R.R. § 2.61 (a)(2), (c) (requiring Northwell to "continuously require" employees be fully vaccinated against COVID-19 if they "engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease.").

This Court has confirmed – and reiterated – that "accommodations placing an employer in violation … of state law" imposes an undue hardship on the employer and renders such failure-to-accommodate claims subject to dismissal at the pleadings stage. *See, e.g.*, *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 186 (2d Cir. 2025).[12] In fact, Plaintiffs' requested religious "accommodation" – a blanket exemption from the DOH Mandate – has been found to constitute an undue hardship even after the Supreme Court's decision in *Groff*, and in light of the subsequent status of the DOH Mandate.

---

[12] This concept is no different in the context of COVID-19 vaccination than it is in other contexts. *See Russo*, 129 F. 4th at 186 (recognizing concept that it is an undue hardship for an employer to grant an accommodation that would violate federal *or* state law *or* regulation). *See also Hamilton v. City of New York*, 563 F. Supp. 3d 42, 55 (E.D.N.Y. 2021) (granting summary judgment on religious discrimination claim where requested accommodation would have posed an undue hardship because it would have required the employer to violate OSHA regulations).

This is the ***very same issue*** presented in *Does 1-2 v. Hochul*, No. 22-2858, 2024 WL 5182675 (2d Cir. Dec. 20, 2024). The *Does 1-2* plaintiffs sought religious accommodations in the form of "the same protective measures that have sufficed" prior to the enactment of the DOH Mandate. *See Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 132, 145 (E.D.N.Y. 2022) (finding the "sole 'accommodation' the plaintiffs seek – a religious exemption from the vaccine requirement – would impose an undue hardship on the Private Defendants because it would require them to violate state law."). In affirming the district court's dismissal of the Title VII claims, this Court held:

> Plaintiffs were all covered personnel under Section 2.61 which meant granting their sole request for a religious exemption would have required the Private Defendants to violate the state regulation. This, in turn, would have subjected the Private Defendants to financial penalties or a suspension or revocation of their operating licenses. *See* N.Y. Pub. Health Law § 12 (2008); *id.* § 2806(1)(a)(2010). Even under the heightened standard for undue hardship recently set forth in *Groff*, the risk of these potential penalties more than suffices to demonstrate that the Private Defendants were subject to such hardships here.

2024 WL 5182675, at *4 (citing *D'Cunha*, 2023 WL 7986441, at *3). Similarly, in *D'Cunha*, this Court found that even after *Groff*, granting a religious exemption would constitute an undue hardship if the employee was covered personnel within the DOH Mandate. *See D'Cunha*, 2023 WL 7986441, at *2-3 (finding Northwell could not have granted the plaintiff's "religious-exemption request without violating the State Mandate, exposing itself to potential penalties, and thereby suffering an undue hardship."). This Court went so far as to acknowledge that the "**conclusion is**

34

consistent with the Supreme Court's clarification of the 'undue hardship' standard in *Groff* because the burden placed on an employer from violating a state law, like the State Mandate in this case, is both 'excessive' and 'unjustifiable.'" *Id.* at \*3 (quoting *Groff*, 600 U.S. at 469) (internal citations omitted) (emphasis added).

Plaintiffs ignore these on-point decisions by this Court when they argue that Northwell cannot establish undue hardship in this case, which is effectively identical to *D'Cunha* and *Does 1-2*. Moreover, this Court is not alone in reaching this conclusion. In *Lowe v. Mills*, the First Circuit held that "[t]he risk of license suspension facing [defendants] would readily meet" the statutory definition of a "significant difficulty or expense" and "would have constituted an undue hardship under any plausible interpretation." 68 F.4th 706, 721-23 (1st Cir. 2023), *cert. denied*, 144 S. Ct. 345 (2023). "Indeed, it is difficult to imagine a penalty that would cause a healthcare provider more significant difficulty …" *Id.* at 721 (quoting 42 U.S.C. § 2000e(j)).

Contrary to Plaintiffs' assertion, the Supreme Court's decision in *Groff* does not require an employer to incur a "substantial increase in costs" to be "undue." *See* Opening Br. 20, 22-23. Rather, the *Groff* Court held that "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." 600 U.S. at 468. Courts must "apply [this] test in a manner that takes into account all relevant factors in the case at hand" and "should resolve whether a hardship would

be substantial in the context of an employer's business in the common-sense manner that it would use in applying any such test." *Id.* at 470-471.

Even before this Court weighed in, district courts held that *Groff* supports a finding of undue hardship. For example, in *Cagle v. Weill Cornell Medicine*, No. 22-cv-6951 (LJL), 2023 WL 4296119 (S.D.N.Y. June 30, 2023), the Southern District explained:

> The Court does not construe *Groff* as altering the result in this case or as effectively presenting Defendant and all others similarly situated with the Hobson's choice of either violating federal law or violating state law … In the words of the Supreme Court, the "reasonable accommodation" that Plaintiff seeks from Defendant—that it violate Section 2.61—is itself "unjustifiable."

*Id.* at *4 n.2 (internal citations omitted); *see also Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.,* No. 22-CV-2929 (CS), 2023 WL 3467143, *4 n.3 (S.D.N.Y. May 15, 2023) (holding "[t]he outcome of [*Groff*] will not affect the result[s] here"). As these decisions demonstrate, Plaintiffs' attempt to turn the Supreme Court's "common sense" test in *Groff* into a prohibition against any consideration of undue hardship beyond the cost of masks and tests is meritless and has already been rejected.

### 3. The Current Status of the DOH Mandate Is Irrelevant

Contrary to Plaintiffs' repeated arguments, the current status of the DOH Mandate is irrelevant to the matter before this Court. *See D'Cunha*, 2023 WL 7986441, at *3 n.4 ("The fact that the State Mandate was repealed in October 2023

does not change our analysis in the present case as the events at issue occurred in 2021."). *Accord Wilson v. New York Soc'y for the Relief of the Ruptured & Crippled, Maintaining the Hospital for Special Surgery*, 22-CV-9207 (AT) (JLC), 2023 WL 5766030, at *5 (S.D.N.Y. Sept. 7, 2023) (dismissing religious discrimination claim because "regardless of the current status of Section 2.61, the regulation was in effect at the time of Wilson's request for a religious exemption, and it therefore would have been an undue hardship for Defendant to comply with his request"); *Mace v. Crouse Health Hosp., Inc.*, No. 522CV1153TJMATB, 2023 WL 5049465, at *8-9 (N.D.N.Y. Aug. 8, 2023) (finding whether the DOH Mandate might ultimately be deemed unenforceable "ha[d] no bearing on whether Defendant violated Plaintiff's rights by following the law as it then existed."). Nor was Northwell required to skate on the razor's edge of liability by attempting to predict the ultimate outcome as to the lawfulness of the DOH Mandate or the state's ability to enforce the same. *See Lowe*, 68 F.4th at 724 (noting "the Providers do not have enforcement authority with respect to the Mandate, and they have no power to determine for the State that the Mandate is invalid under Title VII"); *Dennison*, 2023 WL 3467143, at *5 n.5 (noting employers were not free to ignore the State Mandate when temporarily enjoined, nor "required to accurately predict the outcome of litigation").

By its express terms, the DOH Mandate had an enforcement mechanism that applied to "any … 'hospital' in Section 2801 of the Public Health Law." 10 N.Y.C.R.R. § 2.61(a)(1). Legislative history confirms the DOH Mandate was

enacted pursuant to Public Health Law §§ 2800 and 2803. *See* 2022 N.Y. Reg. Text 601321, 44 N.Y. Reg. 4 (Feb. 9, 2022). Accordingly, the potential sanctions to Northwell for violating the DOH Mandate is the same as any other regulation promulgated, including fines, penalties, and loss of licensure. *See* N.Y. Pub. Health L. § 2806. Contrary to Plaintiffs' cursory arguments, there is no question that New York State authorities could sanction providers for failing to comply with the DOH Mandate – and those potential sanctions included loss of licensure.[13] Northwell was not required to subject itself to potential liability up to and including the loss of its operating license by attempting to predict the ultimate outcome as to the lawfulness of the DOH Mandate or the State's ability to enforce it. *See D'Cunha*, 2023 WL 7986441, at *3 n.3 (noting the temporary bar on DOH enforcement did not alter conclusion that undue hardship existed given the DOH Mandate was still valid law even during temporary injunction period); *id.* at n.4 ("The fact that the State Mandate was repealed in October 2023 does not change our analysis in the present case as the events at issue occurred in 2021."); *Lowe*, 68 F.4th at 724 (noting "the Providers do

---

[13] Even after the DOH Mandate was no longer in full force and effect, the State indicated it would continue to issue sanctions for prior violations. *See* May 24, 2023 letter from N.Y.S. Department of Health, available at https://www.health.ny.gov/facilities/adult_care/dear_administrator_letters/docs/dal_23-09.pdf (last visited Apr. 29, 2025) (confirming the State may "continue to seek sanctions against providers based on previously cited violations that allegedly occurred."). *See also Moore v. Montefiore Med. Ctr.*, No. 22-cv-10242(ER), 2023 WL 7280476, at *1 (S.D.N.Y. Nov. 3, 2023) (continuing to recognize, even after the Mandate was repealed, that failure to comply when it was in effect "subjected a hospital to the possible revocation of its operating license"). The Court may take judicial notice of public records. *Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F. Supp. 3d 260, 269 n.4 (E.D.N.Y. 2019).

38

not have enforcement authority with respect to the Mandate, and they have no power to determine for the State that the Mandate is invalid under Title VII").

Plaintiffs' reliance on an outdated doctrine in *Norton v. Shelby County*, 118 U.S. 425 (1886), is unavailing as the Supreme Court abandoned it decades ago. *See* Opening Br. Sects. II, III.A. *See also Lemon v. Kurtzman*, 411 U.S. 192, 199 (1973) ("However appealing the logic of *Norton* may have been in the abstract, its abandonment reflected our recognition that statutory or even judge-made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct. This fact of legal life underpins our modern decisions recognizing a doctrine of nonretroactivity."); *U.S. v. DePoli*, 628 F.2d 779, 782 (2d Cir. 1980) (recognizing that the *Norton* view, under which an unconstitutional law is treated as having no effect from the date of enactment "has been replaced by a more realistic approach" that recognizes laws have consequences that cannot be ignored).[14]

Finally, Plaintiffs' arguments that the DOH Mandate is unenforceable because it is "void-for-vagueness" is non-sensical. *See* Opening Br. Sect. III.A. At the outset, Plaintiffs *do not* bring a due process claim under the Fourteenth Amendment – or any other constitutional claim – against Northwell in this *action. See* A-043-69

---

[14] Plaintiffs' reliance upon *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) is puzzling. *See* Opening Br. 17-18. At issue in *Munsingwear* was whether the doctrine of *res judicata* applied to subsequent litigation as to damages when the original injunctive relief sought was denied. *Id.* at 37. The doctrine of *res judicata* is inapplicable in *this matter* as neither Northwell, nor any of the Plaintiffs were party to *Med. Prof.'s for Info. Consent v. Bassett*.

*generally*. *See also VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186 (2d Cir. 2010) (noting the void-for-vagueness doctrine is, "one of the most fundamental protections of the Due Process Clause"); *Thompson v. Keliher*, 2024 WL 4851243, at *39 (D. Me. Nov. 21, 2024) (noting "void for vagueness claims are typically brought pursuant to the due process clause").

As noted above, the DOH Mandate was enacted pursuant to New York's Public Health Law §§ 2800 and 2803. *See* 2022 N.Y. Reg. Text 601321, 44 N.Y. Reg. 4 (Feb. 9, 2022). In fact, the DOH Mandate *expressly identifies* the entities that are covered by the regulation. *See* 10 N.Y.C.R.R. § 2.61(a)(1)(i)-(iv). In fact, this Court previously rejected a similar argument with respect to the DOH Mandate's medical exemption provision. *See We the Patriots I*, 17 F.4th at 289 ("The medical exemption here does not 'invite' the government to decide which reasons for not complying with the policy are worthy of solicitude.") (internal citation omitted).

Finally, Plaintiffs rely upon cases that do not even support their own argument. *See* Opening Br. Sect. III.A. As this Court has noted, a law may be "unconstitutionally vague if it authorizes or even encourages arbitrary and discriminatory enforcement." *Thibodeau v. Protuondo*, 486 F.3d 61, 65-66 (2d Cir. 2007) (internal quotation marks omitted). The vagueness doctrine "does not require meticulous specificity from every statute … Instead, the degree of vagueness that the Constitution tolerates … depends in part on the nature of the enactment," with laws imposing criminal penalties receiving "more stringent analysis." *Id.* at 66

(internal quotation marks omitted). *See also Union Square Supply Inc. v. De Blasio*, 572 F. Supp. 3d 15, 22 (S.D.N.Y. 2021) (noting the "plain-language rule provides sufficient guidance to regulated parties, particularly given the relaxed vagueness test applicable in the context of this civil enforcement regime.") Yet, Plaintiffs rely exclusively upon cases where the statute or regulation involved potential *criminal penalties for the plaintiffs* – which is not the case here. *See, e.g.*, *United States v. Davis*, 588 U.S. 445, 448-49 (2019) (discussing constitutionality of law used to convict individuals of crimes with mandatory minimum prison sentence of five years); *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 243 (2012) (penalties for violating statute at issue involved fines and/or up to two years imprisonment); *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999) ("It is a criminal law that contains no *mens rea* requirement…"); *Kolender v. Lawson*, 461 U.S. 352, 353 (1983) ("This appeal presents a facial challenge to a criminal statute …").

Accordingly, the District Court's decision should be affirmed, and Plaintiffs' Title VII religious discrimination claims should be dismissed.

## III. The District Court Correctly Dismissed Taylor's ADA Claim

The District Court properly dismissed Taylor's ADA claims on three grounds: (1) Taylor failed to meaningfully oppose Northwell's Motion to Dismiss; (2) Taylor failed to plausibly allege three of the four *prima facie* elements of her claim; and (3) even if Taylor plausibly alleged a *prima facie* claim, her requested accommodation amounted to an undue hardship to Northwell. *See* A-268-274.

41

### A. Taylor Abandoned Her ADA Claim

Since Taylor failed to address arguments in opposition to Northwell's Motion to Dismiss, this Court may consider her claim abandoned. *See Farag*, 2023 WL 2770219, at *2. As noted by the District Court, "Plaintiff Taylor's argument in her opposition is nothing more than recitation of the conclusory facts already set forth in the amended complaint … [and] do[es] not address the deficiencies raised in [Northwell's] Motion." A-269.

Not only did Taylor respond with meager "arguments" in her opposition before the District Court, but she also sets forth the same recitation of boilerplate allegations contained in the Complaint before this Court. *Compare* A-230-232 *with* Opening Br. 24-26.[15] "Merely offering a 'conclusory assertion that the complaint ha[s] stated a claim for each and every cause of action' constitutes 'failure to meaningfully discuss' the opposing party's arguments supporting a finding of abandonment." *Ndemenoh v. Boudreau*, No. 20-CV-4492 (RA), 2023 WL 6122852, at *5 (S.D.N.Y. Sept. 19, 2023) (quoting *Farag*, 2023 WL 2770219, at *2). Here, Taylor's reliance on the allegations of the Amended Complaint "is insufficient to constitute engagement with or a meaningful response to [Northwell's] arguments." *Id.* Taylor does not even address Northwell's detailed arguments as to why her

---

[15] Plaintiffs' reliance upon *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93 (2d Cir. 2009) to support Taylor's ADA claim is puzzling given the claim at issue in the decision was for unpaid overtime under the Fair Labor Standards Act – not any discrimination claim – let alone a claim brought under the ADA. *See* Opening Br. 26.

allegations are insufficient to meet the second, third, and fourth prongs of her *prima facie* claim under the ADA. Accordingly, this Court should affirm dismissal of the Third Cause of Action as abandoned.

### B. Taylor Failed to Plausibly Allege a *Prima Facie* Claim

To state a discrimination claim under the ADA, Taylor must allege that: (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (4) she suffered an adverse action *because of* her disability. *See Sharikov*, 103 F.4th at 166; *Davis v. New York City Dept. of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).

For a failure-to-accommodate claim, Taylor must allege (1) that she is a person with a disability under the ADA, (2) Northwell knew of her disability, (3) "with reasonable accommodation, [she] could perform the essential functions of the job at issue," and (4) that Northwell refused such accommodations. *See Morey v. Windsong Radiology Group, P.C.*, 794 F. App'x 30, 32 (2d Cir. 2019) (quoting *McMillian v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013) and affirming dismissal where plaintiff failed to allege facts sufficient to show how her alleged disability substantially limits her major life activities). The burden then shifts to the defendant to show "that the plaintiff's proposed accommodation is unreasonable" which is "in effect, … showing, as an affirmative defense, that the proposed

accommodation would cause [Defendant] to suffer an undue hardship." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995).

Here, Taylor failed to plausibly allege three elements of her *prima facie* claim under either theory and, accordingly, the burden never shifted to Northwell. However, even if the burden did shift to Northwell, Taylor's proposed accommodation constituted an undue hardship for Northwell.

### 1. Taylor Failed to Plausibly Allege She Was "Disabled"

The ADA defines a disability as an "impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Under the ADA, an individual is disabled if he/she: (1) has a physical … impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarding as having such an impairment. *Holmes v. New York City Dept. of City-Wide Admin. Services*, No. 14-CV-8289(KBF), 2015 WL 1958941, at *3 (S.D.N.Y. Apr. 30, 2015) (citing 42 U.S.C. § 12102(1)). As articulated in a recent decision, "[t]he key word is 'substantially' [and] [c]ourts regularly dismiss complaints that do not specify the nature, duration, or frequency of a disabling condition, and therefore do not permit a court to determine if the alleged disability is substantially limiting." *Papaliberios v. Mt. Sinai Health System, Inc.*, No. 23-CV-8661 (EK) (AYS), 2025 WL 964114, at *3 (E.D.N.Y. Mar. 31, 2025) (collecting cases).

This is the precise issue with Taylor's alleged "disability." She alleges in conclusory fashion that her "neurological disorder" "substantially limits one or more of [her] major life activities, **such as** working, caring for herself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working." A-066 ¶111 (emphasis added). That's it. Even her *individual* declaration did not provide any more specific information with respect to her alleged disability and how it affected her major life activities. *See* A-160 ¶¶5-6 (alleging she could not receive a COVID-19 vaccine "without it impacting [her] health"). Courts throughout this Circuit have repeatedly found that vague, conclusory averments without factual allegations are insufficient to state a plausible claim for relief under the ADA.

In *Papliberios*, the plaintiff alleged she was considered disabled based upon "fertility issues" without providing any further facts as to how her "fertility issues" affected a major life activity. *See Papaliberios*, 2025 WL 964114, at *3. In determining the complaint did "not explain the alleged disability with enough detail for the Court to determine if it is substantially limiting," the court noted the complaint's failure "to describe the nature of the fertility issues, the extent to which they might limit reproduction, or the interplay between these issues and the vaccine requirement" resulted in dismissal. *Id.* Similarly, in *Suarez v. New York County District Attorney's Office*, the court found that the plaintiff's allegation that "a potential COVID-19 infection would have a more devastating effect on her due to

her medical condition" was "too vague and conclusory to adequately assert a substantial limitation" in order to meet the plausibility threshold that the plaintiff was disabled under the ADA. No. 22 Civ. 10855 (PGG) (OTW), 2025 WL 894516, at *13 (S.D.N.Y. Mar. 24, 2025).[16]

Taylor's meager allegations are wholly insufficient to maintain any claim under the ADA. "[T]o sufficiently allege that an impairment interferes with a major life activity … the plaintiff's allegations must contain sufficient factual support for his or her purported limitations, such as describing in some detail the frequency, duration, or severity of his or her limitations." *Earl v. Good Samaritan Hospital of Suffern NY*, 625 F. Supp. 3d 292, 304 (S.D.N.Y. 2022). Taylor's allegations contain no such details – instead, she relies on the conclusory assertions that her "neurological disorder" "substantially limits **one or more** major life activities" and then simply provides a laundry list of "major life activities" (*see* A-066 ¶111) without "describing in some detail the frequency, duration, or severity" of her

---

[16] Courts throughout this Circuit have dismissed claims brought under the ADA with far more detailed allegations that Taylor asserts here. *See, e.g.*, *Dominguez v. Bd. of Educ. of Yonkers City Sch. Dist.*, No. 23 Civ. 2460 (NSR), 2024 WL 3427217, at *5 (S.D.N.Y. July 16, 2024) ("Plaintiff's assertions that his medical conditions limited his ability to engage in 'physical movement and activity' including 'routine strenuous tasks' and to 'interact' with others are far too vague to plausibly state a disability. Plaintiff fails to detail the nature and severity of the impairment, its duration or expected duration, and the existence of any actual or expected permanent or long-term impact. Consequently Plaintiff has failed to plead he is 'disabled' under the ADA and RA."); *Marshall v. Westchester Med. Ctr. Health Network*, No. 22-cv-7990 (NSR), 2024 WL 665200, at *9-10 (S.D.N.Y. Feb. 16, 2024) (plaintiff's allegations that she suffered from "debilitating arthritis" that resulted in chronic pain, making it difficult for her to get dressed, walk meaningful distances, sleep, make rounds and supervise staff, sit and work for long periods of time, and commute to various work locations, was "too sparse to show she qualifies as disabled under the ADA.").

alleged limitations. *Earl*, 625 F. Supp. 3d at 304. *See also Nazon v. Time Equities, Inc.*, No. 21 Civ. 8680 (AT) (SLC), 2022 WL 18959570, at *12 (S.D.N.Y. Nov. 22, 2022) (finding plaintiff failed to plausible allege disability under ADA where he alleged "no facts regarding the frequency, duration, or severity of any limitations" caused by his purported disability) *adopted by* 2023 WL 1516905 (S.D.N.Y. Feb. 3, 2023).

Even considering Taylor's actual exemption request (*see* A-212), the fact that Taylor had a "medical contraindication to a vaccine, even if predicated on prior adverse reactions to a vaccination, is insufficient to allege a protected disability if it does not result in 'a substantial limitation of a major life activity.'" *Mercer v. Viacomcbs/Paramount*, 22-CV-6322 (LGS), 2024 WL 3553133, at *5 (S.D.N.Y. July 26, 2024) (dismissing plaintiff's disability discrimination claim based upon alleged adverse reaction without any further detail). *See also Perez v. New York Presbyterian/Weill Cornell Med. Ctr.*, No. 23-CV-6152 (CS), 2024 WL 1514216, at *5-6 (S.D.N.Y. Apr. 8, 2024) (dismissing ADA claim finding plaintiff failed to plausibly allege that her reactions to the flu shot or her family history of reaction to the COVID-19 vaccine substantially limited her ability to work). *Cf. Norman v. NYU Langone Health System*, 492 F. Supp. 3d 154, 164-65 (S.D.N.Y. 2020), *aff'd* No. 20-3634, 2021 WL 5986999 (2d Cir. Dec. 17, 2021) (finding prior allergic reaction to flu vaccination and subsequent contraindication on that basis, insufficient to show disability under ADA).

Accordingly, the perfunctory assertions in the Amended Complaint and Taylor's declaration are insufficient and warrant dismissal of the claims arising from her alleged "neurological disorder," and the District Court's Decision should be affirmed.

### 2. Taylor Was Not Qualified for Her Position

As discussed in Section II.A.i *supra*, absent receiving a medical exemption or being vaccinated against COVID-19, once the DOH Mandate went into effect, Taylor was no longer considered qualified for her role as a Surgical Technologist. *See* A-271-272. *See also* 10 N.Y.C.R.R. § 2.61; *see also We the Patriots, II*, 17 F.4th at 370 (requiring employers to "continuously require" medically eligible personnel be vaccinated under the DOH Mandate). Taylor "would have remained similarly unqualified even if the hospital system had defied state law and 'accommodated' her by allowing her to work in direct patient care unvaccinated." *Papaliberios*, 2025 WL 964114, at *4.

"A plaintiff cannot be considered 'otherwise qualified' unless she is able, with or without assistance, to perform the essential functions of the job in question." *Borkowski*, 63 F.3d at 137-38 (internal citations omitted). As discussed in Section III.C.i *infra*, Taylor's exemption request did not even comport with the requirements under the DOH Mandate and therefore, Northwell could *not* even grant her medical exemption request without facing undue hardship.

### 3.    Taylor Fails to Plausibly Allege a Causal Connection

Finally, as with her religious discrimination claims, Taylor's disability discrimination claim under the ADA fails as Taylor *admits* that her alleged disability was not the reason for her termination – rather it was her refusal to be vaccinated against COVID-19 in accordance with Northwell's policy and the DOH Mandate, which was the basis for her termination. *See* A-068 ¶124 (alleging adverse employment actions were the result of Northwell's "promulgation and implementation of its mandatory COVID-19 policy.").

This admission is fatal to her claim. *See, e.g.*, *D'Cunha*, 2023 WL 2266520, at *2 (holding plaintiff failed to raise an inference of discrimination where she alleged she was terminated for refusing to be vaccinated, not due to her religion). *Cf. Billings*, 2021 WL 4150925, at *6 (dismissing Title VII religious discrimination claim on the ground that the employee's "own pleadings demonstrate that she admitted that she was dismissed for non-discriminatory reasons."). As noted by the District Court, none of the remaining, conclusory allegations contained in the Amended Complaint are sufficient to raise a plausible inference of discrimination. *See* A-273 (citing Am. Compl. ¶¶117-123).

Taylor fails to point to more favorable treatment of individuals outside of her protected group, or degrading criticisms towards members of her protected group. *See Papaliberios*, 2025 WL 964114, at *4 (citing *Littlejohn*, 795 F.3d at 312). Accordingly, the District Court's decision should be affirmed, and Plaintiff Taylor's

ADA disability discrimination claim under any theory of liability should be dismissed.

### 4. Taylor's Arguments Regarding the "Interactive Process" Cannot Save Her ADA Claim

Taylor's straw-man argument regarding the interactive process is nothing more than an effort to deflect the Court's attention from the otherwise wholly insufficient allegations. Taylor spends a significant portion in her brief ignoring her wholesale pleading deficiencies and instead argues that Northwell's failure to engage in the interactive process warrants a reversal of the District Court's Decision. *See* Opening Br. Sect. IV.B. Even the cases Plaintiffs rely upon hold the opposite. *See, e.g.*, *McBride v. BIC Consumer Prod. Mfg. Co., Inc.*, 583 F.3d 92, 101 (2d Cir. 2009) (holding "that an employer's failure to engage in a sufficient interactive process does not form the basis of a claim under the ADA") (cited in Opening Br. at 22-23).

None of the other cases cited by Taylor save her claim either – as they all involve matters at different procedural stages or are otherwise factual distinguishable. *See* Opening Br. Sects. IV.B-C.[17]

---

[17] *See Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015) (non-employment case reversing summary judgment after noting only the third prong of *prima facie* ADA claim at issue); *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184-85, 187 (2d Cir. 2006) (remanding ADA claim to District Court after finding the defendant cut-off the plaintiff before the plaintiff was able to make request for accommodation); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 219 (2d Cir. 2001) (declining to consider whether defendant-employer had a duty to engage in the interactive process under the ADA because the issue was not raised before the District Court); *Bartlett v. New York State Bd. of Law Examiners*, 226 F.3d 69, 74 (2d Cir.

### C.   Taylor's Medical Exemption Request Amounted to An Undue Burden

Even assuming Taylor could establish a *prima facie* claim for disability discrimination under the ADA (she cannot), her medical accommodation request does ***not*** comport with the requirements to obtain a medical exemption from the DOH Mandate. *Compare* A-204-205 ¶3 *and* A-211-212, *with* 10 N.Y.C.R.R. § 2.61(d)(1). The DOH Mandate requires:

> [A]ny licensed physician, physician assistant, or certified nurse practitioner certifies that **immunization with COVID-19 vaccine** is *detrimental to the health of member of a covered entity's personnel*, based upon a pre-existing health condition, the requirements of this section relating to COVID-19 immunization shall be inapplicable only until such immunization is found no longer to be detrimental to such personnel member's health. **The nature and duration of the medical exemption must be stated in the personnel employment medical record, or other appropriate record, and must be in accordance with generally accepted medical standards**, (see, for example, the recommendations of the Advisory Committee on Immunization Practices of the U.S. Department of Health and Human Services) …

10 N.Y.C.R.R. § 2.61(d)(1) (emphasis added). Taylor's physician did not indicate that a prior COVID-19 vaccine was detrimental to her health or that her exemption request was based upon a **pre-existing medical condition**. Instead, in his note, the physician notes that Taylor had a "neuro-type" reaction to an influenza vaccination

---

2000) (non-employment case remanding to District Court after failing to consider whether the plaintiff's alleged disability substantially limited the plaintiff with respect to working); *Staron v. McDonald's Corp.*, 51 F.3d 353, 355-56 (2d Cir. 1995) (discussing application of ADA to owners and operators of public accommodations). *See also Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 177, 179 (2d Cir. 2016) (no ADA claims at issue on appeal after trial).

approximately 22 years earlier. *See* A-204-205 ¶3 *and* A-211-212.[18] The physician made no reference to any sort of medical condition or COVID-19 vaccine safety risk and made no correlation between the 1999 influenza vaccination and the 2021 COVID-19 vaccine, instead merely asserting a recommendation that Taylor "*could also not receive a COVID vaccine.*" *Id.* Taylor's requested medical exemption was not supported by "generally accepted medical standards" given there is no contraindication listed based upon reactions to a prior flu vaccine without any additional information.[19] *See Together Emps. v. Mass. Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 438, n.15 (D. Mass. 2021) (an employer may consider government guidance as part of the interactive process). Nor does Taylor even allege her medical exemption request was compliant with the parameters set forth under the DOH Mandate. *See* A-043-70 *generally*. There are simply no allegations that Northwell could have accommodated Taylor by granting her a medical exemption – when the

---

[18] On a motion to dismiss, "the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Rice as Tr. of Richard E. & Melinda Rice Revocable Fam. Tr. 5/9/90 v. Intercept Pharms., Inc.*, No. 21-cv-0036 (LJL), 2022 WL 837114, at *6 (S.D.N.Y. Mar. 21, 2022) (citation omitted). Taylor relies upon her medical exemption request and supporting documentation in asserting her ADA claim. *See, e.g.*, A-067 ¶116.

[19] *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, *Interim Clinical Considerations for Use of COVID-19 Vaccines in the United States*, https://www.cdc.gov/vaccines/covid-19/clinical-considerations/interim-considerations-us.html, (last updated May 12, 2025). "[I]t is clearly proper to take judicial notice of information retrieved from official government websites." *Hernandez v. Staten Island Univ. Hosp./Northwell Health*, No. 22-CV-3572-RPK-JRC, 2023 U.S. Dist. LEXIS 145507, at *6 n.3 (E.D.N.Y. Aug. 18, 2023) (internal quotation omitted), *adopted by* 2023 U.S. Dist. LEXIS 157942 (E.D.N.Y. Sept. 6, 2023).

medical exemption did not comport with the DOH Mandate – which Northwell was *required* to follow.

As discussed in Section II.B.ii *supra*, an accommodation does not require an employer, such as Northwell, to skate on the razor's edge of liability when potentially faced with significant sanctions if it were to have violated the DOH Mandate. In other words, Northwell was not free to ignore the statutory requirements for covered personnel to be eligible for a medical exemption under the DOH Mandate. *See* 10 N.Y.C.R.R. § 2.61(d). And where, as here, Taylor's exemption request: (1) failed to identify a pre-existing medical condition; (2) made no reference or correlation between Plaintiff's reaction to an influenza vaccination over 20 years earlier and the COVID-19 vaccine; and (3) was not supported by "generally accepted medical standards" – it did not meet the standard set forth in the DOH Mandate. Northwell was not required to violate the DOH Mandate by disregarding Taylor's shortcomings. *See, e.g.*, *Riley v. New York City Health & Hosps. Corp.*, No. 22-cv-2736, 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023) (holding plaintiff's request "would cause the defendant the undue hardship of forcing it to violate [the DOH Mandate]").

In fact, Courts have repeatedly held that risks to health and safety, and corresponding exposure to liability, present an undue hardship for an employer. *See, e.g.*, *Beickert*, 2023 WL 6214236, at *5-6 (allowing teacher to remain unvaccinated "would have imposed an undue hardship" where it would have risked the health and

safety of students and other employees); *Kalsi v. New York City Transit Auth.*, 62 F. Supp. 2d 745, 758 (E.D.N.Y. 1998) ("Where, as here, the proposed accommodation threatens to compromise safety in the workplace, the employer's burden of establishing an undue burden is light indeed."), *aff'd* 189 F.3d 461 (2d Cir. 1999). These risks are elevated in a hospital or medical setting, where patients are already suffering from physical ailments and seeking treatment. *See Biden v. Missouri*, 142 S. Ct. 647, 652 (2022) ("[E]nsuring that providers take steps to avoid transmitting a dangerous virus to their patients is consistent with the fundamental principle of the medical profession: first, do no harm. It would be the 'very opposite of efficient and effective administration for a facility that is supposed to make people well to make them sick with COVID-19.'") (internal citation omitted). Courts throughout New York have found that (as Northwell did) placing an unvaccinated person in a healthcare setting would constitute an undue hardship. *See, e.g.*, *Does 1-2*, 632 F. Supp. 3d at 127-28 (noting it was "the consensus of reliable public health authorities that the COVID-19 vaccine prevents the spread of the virus, and that healthcare professionals who work directly with vulnerable patients should be vaccinated"); *Dennison*, 2023 WL 3467143, at *6 (noting health and safety risk unvaccinated healthcare workers pose to other employees and patients, as well as potential risk of civil liability if an unvaccinated employee affects others).

Because Taylor does not plead facts sufficient to establish that she is disabled as defined by law, that Northwell knew of her alleged disability, that she requested

and qualified for a medical exemption under the DOH Mandate, or that she indeed requested anything other than Northwell violating the law, Taylor's ADA claim fails and the District Court's dismissal should be affirmed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant-Appellee Northwell Health, Inc. respectfully requests this Court affirm the District Court's dismissal of Plaintiffs-Appellants' Complaint.

Dated: May 14, 2025

/s/Erin M. Train
Erin M. Train
Jacqueline Phipps Polito
LITTLER MENDELSON, P.C.
375 Woodcliff Drive, Suite 2D
Fairport, New York 14450
Telephone: 585.203.3400
Facsimile: 585.486.1774
Email: etrain@littler.com
Email: jpolito@littler.com

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of this Circuit's Local Rule 32.1(a)(4)(A) because it contains no more than 13,914 words.

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, and is in Times New Roman, 14-point font.

Dated: May 14, 2025        **LITTLER MENDELSON, P.C.**

By: *<u>/s/ Erin M. Train</u>*
    Erin M. Train
    Jacqueline Phipps Polito
    375 Woodcliff Drive, Suite 2D
    Fairport, NY 14450
    Telephone: (585) 203-3400
    Facsimile: (585) 486-1774
    Email: etrain@littler.com
    Email: jpolito@littler.com